IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMMANUEL BRYANT,<br><br>*Plaintiff,*<br><br>v.<br><br>RADDAD, et al.,<br><br>*Defendants.* | Case No. 2:21-cv-01116-JDW |

## MEMORANDUM

Emmanuel Bryant seeks a default judgment against Commissioner Blanche Carney, Warden Michelle Farrell, Warden Talmadge, Lt. Horsey, Sgt. Bishop, C.O. Brew, C.O. Handy, C.O. Kilson, and C.O. Raddad for his claims arising under 42 U.S.C. §1983 for violations of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution Of The United States. Following a hearing, I will grant his Motion as to most of the Defendants on some of those claims and award damages against each culpable Defendant on an individual basis. However, I will not enter judgment where the facts that Mr. Bryant alleged and to which he testified don't give rise to a claim for relief.

I.  **BACKGROUND**

   A.  **Facts**

Mr. Bryant is a homosexual man who, in 2020, was an inmate at the Philadelphia Industrial Correctional Center ("PICC"). In June 2020, due to his position as a "block

representative," the Pennsylvania Institutional Law Project ("ILP") contacted Mr. Bryant and asked him to help the organization ensure compliance with court-ordered protocols regarding conditions at the prison. Mr. Bryant believed PICC wasn't implementing the protocols and corresponded with ILP regarding the poor conditions there.

Due to his work with ILP, corrections officers at PICC harassed Mr. Bryant. The attacks impacted Mr. Bryant's mental health and destroyed his familial relationships. He also suffered long term injuries as a result of a physical attack. Mr. Bryant was targeted due to his speech, but the harassment included slurs regarding his sexuality, which outed him to many of his fellow inmates. The relevant conduct and damages included the following.

### 1. C.O. Raddad

On January 23, 2021, C.O. Raddad physically assaulted Mr. Bryant. The incident occurred when C.O. Raddad opened the food slot in Mr. Bryant's cell door to serve the evening meal. Mr. Bryant put his left arm and right hand in the slot to keep it open while he asked C.O. Raddad to speak to a social worker and a supervisor. C.O. Raddad, who had a history of harassing Mr. Bryant for being homosexual and a "snitch," responded by threatening to break Mr. Bryant's arm, and called him a "rat" and a slur based on his sexuality. C.O. Radded then attacked Mr. Bryant's hand and arm by slamming them in the food slot, bending them outside the door, and kneeing them.

The attack left Mr. Bryant's hand gashed and bloody. Ultimately, he required medical attention, including at least five stiches and multiple visits to doctors. Mr. Bryant received physical therapy for the injury twice a week for at least nine months following the incident and developed carpel tunnel syndrome as a result.

### 2. C.O. Handy

C.O. Handy saw Mr. Bryant shortly after C.O. Raddad attacked Mr. Bryant. Mr. Bryant says that C.O. Handy saw his injury, including blood on the floor and on the cell door, but refused him medical treatment, even when he asked. When Mr. Bryant complained, C.O. Handy responded that Mr. Bryant was having problems with her fellow officer and that she had to side with him. She didn't mention anything about Mr. Bryant being a "snitch" or his correspondence with ILP.

### 3. Lt. Horsey

Lt. Horsey saw Mr. Bryant the night after he was attacked. Mr. Bryant showed her his hand and requested medical treatment, but she refused. When Mr. Bryant stuck his arm through the food slot to demand treatment, Lt. Horsey threatened to pepper spray him and remove him from his cell if he didn't step back. Lt. Horsey never mentioned Mr. Bryant's communication with ILP or his grievances.

### 4. C.O.s Kilson and Brew

C.O.s Kilson and Brew engaged in similar conduct both before and after Mr. Bryant filed his original complaint. While Mr. Bryant was under their supervision, both C.O.s Kilson

and Brew denied Mr. Bryant meals and recreation time. They repeatedly called him a "snitch," a "rat," and a slur related to his sexuality, and they encouraged other inmates to attack him. Both C.O.s told Mr. Bryant that they denied his recreation and meals because of his communication with ILP, his original Complaint, and grievances he'd filed against other C.O.s.

### 5. Sgt. Bishop

On March 19, 2021, prison officials transferred Mr. Bryant to the "Detention Center" ("DC"). The next day, Sgt. Bishop ordered a search of Mr. Bryant's cell. When asked the reason or the search, Sgt. Bishop told Mr. Bryant that it was because Mr. Bryant "pissed off the wrong people by running [his] mouth." Sgt. Bishop called Mr. Bryant a "snitch" and instructed the C.O.s conducting the search to throw out most of Mr. Bryant's belongings, including legal documents, paperwork, and irreplaceable pictures of his family and friends.

### 6. Commissioner Carney, Warden Farrell, and Warden Talmadge

At various times during the course of this harassment, Mr. Bryant filed grievances and either confronted or informed Commissioner Carney, Warden Farrell, and Warden Talmadge about their subordinates' behavior. On each occasion, they either ignored his pleas for help or told him they'd investigate. On the occasions they acknowledged his requests, they never followed up. At no time did any of them mention Mr. Bryant's communication with ILP or his Complaint or grievances.

**7.    Damages**

As a result of the officers' conduct, Mr. Bryant suffered significant damages. Physically, C.O. Raddad injured Mr. Bryant's hand. The injury required stitches and long-term physical therapy, caused Mr. Bryant's carpel tunnel syndrome, and forced him to wear a brace on his hand for a year.  Additionally, spreading rumors that Mr. Bryant was a "snitch" and outing him as homosexual caused other inmates to attack him. During a particularly brutal incident, inmates stabbed Mr. Bryant multiple times while another inmate called him a "rat," a "snitch," and a slur based on his sexuality.

The harassment also had psychological repercussions. The attacks and insults caused Mr. Bryant stress and anxiety. Outing him to the other inmates as a homosexual amplified the despair. Depriving Mr. Bryant of his recreation time and meals meant he couldn't make phone calls, shower, or work in the law library, which caused depression. Mr. Bryant sought treatment from a psychologist, who prescribed him medication to treat his depression and anxiety. He still requires that medication today.

Mr. Bryant also suffered several emotional injuries as a result of the conduct at issue. *First*, Sgt. Bishop ordered the destruction of most of Mr. Bryant's personal belongings as part of the search he conducted of Mr. Bryant's cell. The lost property included irreplaceable items, including photographs of his friends and family. Disposing of those items distressed Mr. Bryant. *Second*, outing Mr. Bryant as a homosexual wasn't confined to the prison. People on the outside, including Mr. Bryant's family and friends,

found out. Mr. Bryant comes from a family and community that isn't accepting of his sexuality. Once his family found out that he's homosexual, they stopped talking to him. Some of his friends refuse to talk to him as well. His familial relationships and friendships still haven't recovered.

### B. Procedural History

Mr. Bryant filed his original Complaint on March 5, 2021, and an Amended Complaint on September 21, 2021. The United States Marshal Service filed proof of service for Defendants Commissioner Blanche Carney, Warden Michelle Farrell, Warden Talmadge, Lt. Horsey, Sgt. Bishop, C.O. Brew, C.O. Handy, C.O. Kilson, and C.O. Raddad, on December 13, 2021. They could not serve the other defendants because Mr. Bryant didn't provide sufficient information to identify who to serve. On October 17, 2022, the Court issued an Order directing the Defendants to file an Answer by November 18, 2022, and no Defendant filed a responsive pleading. On November 28, 2022, the Court issued an Order notifying Plaintiff that he must file a Request For Entry Of A Default against the Defendants, in accordance with Rule 55 of the Federal Rules of Civil Procedure, on or before December 23, 2022. The Plaintiff requested an entry of default on December 6, 2022, which I granted on December 16, 2022. Mr. Bryant filed a Motion For Default Judgment on July 11, 2023, and I held a hearing with Mr. Bryant on August 14, 2023, regarding the Motion, which I now resolve.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a district court to enter a default judgment against a properly served defendant who fails to appear. *See* Fed. R. Civ. P. 55(b)(2). To obtain a default judgment pursuant to Rule 55(b)(2), a litigant must first obtain an entry of default from the Clerk of Court pursuant to Rule 55(a). Then, the district court has discretion as to whether to grant a motion for a default judgment. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir.2005). However, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Butler v. Experian Info. Sols.*, No. CV 14-07346, 2016 WL 4699702, at *2 (E.D. Pa. Sept. 7, 2016) (*quoting* 10A Charles Alan Wright et al., Federal Practice and Procedure § 2688.1 (4th ed.)). The court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. *See id*. Before entering default judgment, a court must consider "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164 (3d Cir. 2000) (citation omitted).

III.   DISCUSSION

    A.   **Appropriateness Of A Default Judgment**

The *Chamberlain* factors weigh in favor of entering default judgment. *First*, Mr. Bryant will suffer prejudice if I deny default judgment. Without this entry of default judgment, Mr. Bryant could be left without any recourse to recover damages resulting from his claims. *Second*, the Defendants have not appeared or otherwise made any representations, so I have no basis to conclude that they have a litigable defense. *Third*, I entered default in this case after the Defendants failed to plead, answer, or otherwise respond to the suit. The Defendants have provided no excuse for the delay, even though they were served with the Amended Complaint by the United States Marshal Service, demonstrating they are aware of the lawsuit.

    B.   **Merits Of Claims**

        1.   **First Amendment retaliation**

Mr. Bryant asserts claims for retaliation in violation of the First Amendment against all defendants except C.O. Handy and Lt. Horsey. "To prevail on a First Amendment retaliation claim, a plaintiff must prove that (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link existed between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area School Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (cleaned up, quotations

omitted). For a retaliatory action to deter the exercise of a constitutional right, the action must be more than *de minimis* "criticism, false accusations, or verbal reprimands." *Id.* at 758. But the threshold for deterrence is "very low." *Id.*

Mr. Bryant engaged in protected activity several times: when he corresponded with ILP about the conditions at PICC; when he filed grievances against prison officials; and when he filed his original Complaint. His correspondence with ILP led to retaliation by C.O.s Raddad, Kilson, and Brew, while all the activity led to retaliation by Sgt. Bishop. Each of the retaliatory acts, from the physical attacks to outing Mr. Bryant as a homosexual, was severe and would deter a person of ordinary firmness from exercising his constitutional rights. The Defendants made statements while committing acts that directly tied them to Mr. Bryant's exercise of his First Amendment rights, and but for Mr. Bryant's protected activity the retaliation would not have occurred. Therefore, I will enter default judgment on Mr. Bryant's First Amendment retaliation claims against C.O.s Raddad, Kilson, and Brew, and Sgt. Bishop.

However, the unchallenged facts aren't sufficient to sustain a claim for First Amendment Retaliation against Commissioner Carney, Warden Farrell, and Warden Talmadge. That's because Mr. Bryant admits that although they might have known about his communication with the ILP or his lawsuit, none of these Defendants ever mentioned it or insinuated they wouldn't help him because of it. Nothing Mr. Bryant alleges connects

his protected activity to the actions of Commissioner Carney, Warden Farrell, and Warden Talmadge,[1] so I won't enter default judgment on this claim against them.

## 2. Fourteenth Amendment claims

Mr. Bryant's complaint lists claims against all defendants except C.O. Handy and Lt. Horsey under the Fourteenth Amendment. Most of these claims are identical to his First Amendment retaliation claims, so I will enter judgment on those accordingly.

Separately, Mr. Bryant claims Warden Talmadge deprived him of his due process rights under the Fourteenth Amendment because the prison didn't provide him an "abundance" of materials to make filings in this lawsuit. "A prisoner's due process rights are violated when he is deprived of a legally cognizable liberty interest, which occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Coulston v. Glunt*, 665 F. App'x 128, 130 (3d Cir. 2016) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Mr. Bryant doesn't claim he lacked access to paper, writing utensils, envelopes, stamps, or other material. He just claims he didn't have enough of it. That's not an atypical hardship in relation to the ordinary incidents of prison life. So I won't enter judgment on that claim.

---

[1] To the extent Mr. Bryant attempts to assert this and other claims against Commissioner Carney, Warden Farrell, and Warden Talmadge in their supervisory capacities, he can't do so under Section 1983. *Lawson v. Banta*, No. 20-3444, 2022 WL 1772997 at *2 (3d Cir. 2022) (per curium) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 n.14 (3d Cir. 1993)).

### 3.     Fourth Amendment claims

Mr. Bryant asserts Fourth Amendment claims against C.O. Raddad, C.O. Kilson, C.O. Brew, Sgt. Bishop, Commissioner Carney, and Warden Farrell. The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. Amend. IV. "[T]he Fourth Amendment has no applicability to the contents of a prisoner's cell." *Humphrey v. Sec'y of Pa. Dep't of Corr.*, 712 F. App'x 122, 125 (3d Cir. 2017) (citing *Hudson v. Palmer*, 468 U.S. 517, 536 (1984)). Additionally, although inmates have a "limited right of bodily privacy, subject to the reasonable intrusions necessitated by the prison setting," *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016), an unreasonable seizure requires an intent to restrain for purposes of an arrest. *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021). Therefore, it's questionable whether an inmate can bring a Fourth Amendment claim for an unreasonable seizure of his person.

Mr. Bryant doesn't allege a search or seizure on behalf of C.O.s Kilson and Brew, Commissioner Carney, or Warden Farrell, so I won't enter judgment on the Fourth Amendment claim against them. The only Defendant that searched Mr. Bryant's cell is Sgt. Bishop. Because the Fourth Amendment doesn't apply to the belongings in his cell, including his legal documents, I can't enter judgment on that claim. Additionally, the only Defendant who seized Mr. Bryant is C.O. Raddad. But the facts that Mr. Bryant has pled show that C.O. Raddad attacked him in retaliation for his protected speech, not to arrest him. To the extent a prisoner can assert an unreasonable seizure claim under the Fourth

Amendment, that doesn't meet the standard for intent under *Torres*. I'll deny Mr. Bryant's Motion as to the Fourth Amendment Claims.

### 4. Fifth Amendment claims

The only Defendant that Mr. Bryant claims violated his due process rights under the Fifth Amendment is Warden Talmadge. The Fifth Amendment protects against federal governmental action and doesn't limit state officials. *Caldwell v. Beard*, No. 22-3169, 2023 WL 3734969 at *2 (3d Cir. 2023) (per curium) (citing *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983)). I can't enter judgment on this claim.

### 5. Eighth Amendment claims

Mr. Bryant asserts Eighth Amendment claims against all Defendants. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). Intentionally denying or delaying a prisoner's access to medical care violates the Eighth Amendment when a plaintiff shows (1) the defendants were deliberately indifferent to his medical needs, and (2) the medical needs were serious. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A medical need is serious when it is "so obvious a lay person would recognize the necessity for a doctor's attention." *Atkin v. Taylor*, 316 F.3d 257, 272-23 (3d Cir. 2003). A prison official acts with deliberate indifference when he intentionally delays or denies access to medical care for non-medical reasons. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). Additionally, "[w]hen prison

officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident," so long as the use of force is not "*de minimis*." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). When the claim is for excessive force, "the central question is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quotations omitted).

C.O. Raddad violated Mr. Bryant's Eighth Amendment rights when he slammed the food slot on Mr. Bryant's hand and arm. All facts, such as the contemporaneous use of a slur for Mr. Bryant's sexuality, show that the attack was malicious, intended to inflict pain on him for being a "rat." There was no penological reason for the use of force. The attack was repugnant, resulted in a serious injury that required stitches, and offended contemporary standards of decency. Therefore, I will enter judgment on this claim against C.O. Raddad.

I will also enter judgment on this claim against Lt. Horsey and C.O. Handy. C.O. Handy was one of the first people to see Mr. Byant after the attack by C.O. Raddad. When she arrived, Mr. Bryant's blood was on the floor and the door of his cell, and his hand still hung out of the food slot. The injury required five stitches, so the bleeding should have made it obvious that his injury required care. When Mr. Bryant asked for medical attention, C.O. Handy refused because she claimed she had to support her fellow C.O. Therefore,

C.O. Handy delayed treatment of Mr. Bryant's serious medical need for a non-medical reason and violated his Eighth Amendment rights.

Lt. Horsey also saw Mr. Bryant shortly after the attack. Mr. Bryant stuck his hand out of the food slot so she could see the extent of his injuries. He also requested medical treatment, and Lt. Horsey refused. Instead, she threatened to pepper spray him. Because Lt. Horsey was aware of Mr. Bryant's serious medical need, and delayed his medical treatment for no reason, she unnecessarily inflicted pain, and violated his Eighth Amendment rights.

Mr. Bryant's theory that Commissioner Carney, Warden Farrell, and Warden Talmadge violated the Eighth Amendment by failing to protect him from abuse doesn't meet the standard for an Eighth Amendment claim. The Eighth Amendment imposes "a duty upon prison officials to take reasonable measures to 'to protect prisoners from violence eat the hands of other prisoners.'" *Hamilton v. Leavey*, 117 F.3d 747, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1970)). To succeed on a failure to protect claim, a plaintiff must show: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was aware of facts from which he could infer the substantial risk of *serious* harm exists; (3) the defendant drew that inference; and (4) the defendant deliberately disregarded the apparent risk. *See Farmer*, 511 U.S. at 834-37. Mr. Bryant hasn't alleged Commissioner Carney, Warden Farrell, or Warden Talmadge

had actual knowledge of the substantial risk of serious harm. Therefore, I won't enter judgment against them on this claim.

Additionally, none of C.O. Kilson, C.O. Brew, or Sgt. Bishop's conduct rose to the level of an Eighth Amendment violation. Insults generally aren't grounds for Eighth Amendment claims. *See Gandy v. Reeder*, 778 F. App'x 149, 151 (3d Cir. 2019); *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) ("verbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment").

### 6. Assault and battery

Finally, Mr. Bryant brings a state tort claim for assault and battery against C.O. Raddad. "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done . . . upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). C.O. Raddad attempted to and did injure Mr. Bryant. In doing so, he acted maliciously, and outside the scope of his duties as a correctional officer. Therefore, I will enter judgment on this claim against C.O. Raddad.

### C. Damages

Once a court determines default judgment is warranted, it may "fix the amount which the plaintiff is lawfully entitled to recover and give judgment accordingly." *Pope v. U.S.*, 323 U.S. 1, 12 (1933). Damages pursuant to "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

However, the plaintiff is not automatically entitled to the damages he demanded. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). A district court must consider the facts to determine the proper amount of damages; it doesn't just take the plaintiff's word for it. *See id.* If the alleged damages aren't liquidated or computable, they must be established at an evidentiary hearing held pursuant to Fed. R. Civ. P. 55(b)(2). *See id.* at at1152. "In conducting this inquiry, courts have considerable latitude in determining the amount of damages." *Del. Valley Aesthetics, PLLC v. Doe 1*, 2:20-cv-0456, 2022 WL 17094740 at *8 (E.D. Pa. Nov. 21, 2022) (cleaned up, quotations omitted).

Section 1983 provides for compensatory damages for violations of constitutional rights. *See Pryor v. C.O. 3 Slavic*, 251 F.3d 448, 453 (3d Cir. 2001). That includes damages for pain, suffering, and emotional and mental distress, so long as there's actual proof of those damages. *See id.* In his Motion, Mr. Bryant seeks compensatory and punitive damages, as well as attorney's fees, totaling in the millions of dollars. Because Mr. Bryant is *pro se*, he's not entitled to attorney's fees. However, I held a hearing at which Mr. Bryant's testified regarding the pain, suffering, and emotional turmoil resulting from Defendants' violation of his rights. The testimony was sufficient to establish compensable injurie. Therefore, I will award compensatory damages as follows:

- **C.O. Raddad**: C.O. Raddad is the only defendant who physically injured Mr. Bryant. The injuries he caused required long term treatment. He also engaged in a pattern of retaliation and harassment that contributed to Mr. Bryant's emotional pain and

suffering, which required psychological treatment, and indirectly resulted in physical attacks by other inmates. Finally, he is partly responsible for the destruction of Mr. Bryant's relationship with his family. Therefore, I will enter judgment against C.O. Raddad in the amount of $7,500 in compensatory damages.

- **Sgt. Bishop**: Sgt. Bishop's retaliatory conduct resulted in serious mental anguish that required psychological treatment. He also destroyed irreplaceable personal property that held significant sentimental value to Mr. Bryant. Therefore, I'll enter judgment against Sgt. Bishop in the amount of $5,000 in compensatory damages.

- **C.O.s Kilson and Brew**: C.O.s Kilson and Brew each engaged in a pattern of retaliation and harassment that caused Mr. Bryant emotional distress that required psychological treatment. Their actions also indirectly damaged Mr. Bryant's relationship with his family and indirectly resulted in physical attacks by other inmates. Their culpable conduct was largely the identical. Therefore, I will enter judgment against C.O. Kilson in the amount of $2,500 in compensatory damages, and I will enter judgment against C.O. Brew in the amount of $2,500 in compensatory damages.

- **Lt. Horsey and C.O. Handy:** Both Lt. Horsey and C.O. Handy extended Mr. Bryant's physical pain and suffering by refusing to provide him with medical treatment despite his obvious need for it. This also slightly contributed to his mental anguish. Therefore, I will enter judgment against Lt. Horsey in the amount of $1,000 in

compensatory damages, and judgment against C.O. Handy in the amount of $,1000 in compensatory damages.

## IV.   CONCLUSION

No prisoner should suffer the type of abuse leveled at Mr. Bryant. And no prisoner who suffers such abuse should be prevented from seeking redress because his abusers refuse to appear in court. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

August 25, 2023